IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VIVIAN BUSH,                                    )
                                                )
          Plaintiff,                            )
                                                )          Civil Action No.  11-1287
               v.                               )
                                                )          Chief Magistrate Judge Lisa Pupo
PATRICK R. DONAHOE,                             )          Lenihan
Postmaster General, United States Postal        )
Service,                                        )          ECF No. 22
                                                )
          Defendant.                            )

## OPINION

LENIHAN, M.J.

      Currently before the Court for disposition is Defendant's Motion for Summary Judgment

pursuant to FED.R.CIV.P. 56 and Western District of Pennsylvania Local Rule 56.1 (ECF No.

30).  In this employment discrimination case, Plaintiff, Vivian Bush, asserts that her supervisor

refused to allow her to return to her job as a Postal Service Supervisor of Customer Service while

wearing an open-toed walking cast/boot for approximately five months in 2009.  As a result,

Bush claims that she suffered a loss in pay and benefits, and has filed claims of retaliation under

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, ("Title VII"), age

discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.*

("ADEA"), and disability discrimination (failure to accommodate) under the Rehabilitation Act

of 1973, 29 U.S.C. §§791 *et seq.*, as amended ("Rehabilitation Act").  This Court has subject

matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343.

      For the reasons set forth below, the Court will grant Defendant's motion for summary

judgment in its entirety.

# I.    RELEVANT FACTS[1]

Plaintiff, Vivian Bush ("Bush"), became a career employee with the United States Postal Service ("Postal Service") in 2000. (Def.'s Concise Statement of Material Facts ("CSMF") at ¶2, ECF No. 24.) In December of 2008 and continuing through June of 2009 (the "relevant time period"), Bush was a Postal Service Supervisor of Customer Service assigned to the Wilkinsburg Postal facility. (*Id.*) Bush's race is African American and she was 44 years old during the relevant time period. (*Id.* at ¶1.)

As a supervisor of customer service, Bush worked at a desk which overlooked the various operations on the "work floor" of the Wilkinsburg Postal facility. (*Id.* at ¶4.) Her job duties also required her to be present on the work floor, as well as to travel by foot or motor vehicle outside of the Wilkinsburg Postal facility. (*Id.*) Bush and other supervisors at the Wilkinsburg Postal facility reported directly to Debra Parker, Acting Manager, during the relevant time period. (*Id.* at ¶3.)

Sometime in December of 2008, Bush sustained a non-work related sprain to her right ankle/foot. (*Id.* at ¶6.) On December 31, 2008, Bush's treating podiatrist, William H. Lenz, provided her with an open-toed boot to wear on her right foot for a temporary period of time, including while she was at work. (*Id.* at ¶5.) While at Dr. Lenz's office, Bush placed a call to her supervisor, Parker, who allegedly told her that she could be at work while wearing the open-toed walking boot. (*Id.* at ¶7.)

---

[1] Plaintiff sets forth "Other Material Facts Allegedly at Issue" in paragraphs 29 through 36 of her 2nd Amended Responsive-Statement of Material Facts and Other Material Facts Allegedly at Issue ("Pl.'s 2nd Am. RSMF") (ECF No. 41). All of these statements are either immaterial and/or constitute impermissible legal argument, and therefore, are not set forth under this section. Rather, the Court addresses the issues raised in paragraphs 29 through 36, to the extent they are material, in the Discussion section (Section III) of this Opinion.

In January of 2009, Bush returned to work with the open-toed boot without incident until January 15, 2009. (*Id.* at ¶8.) On January 15, 2009, Parker told Bush that she could not wear the open-toed boot on the work floor of the Wilkinsburg Postal facility because it was a safety issue. (*Id.* at ¶9; *see also* Bush Dep. at 123.)[2] Parker maintains that she only became aware that Bush was present on the work floor with the open-toed boot on January 15, 2009. (Parker Supp. EEO Investigative Aff. dated 2/9/10 ("Parker Supp. EEO Aff.") at ¶3, (Def.'s Ex. I, ECF No. 25-9 at 7); Parker Dep. at 52-53 (Pl.'s 2nd Supp. App., Ex. 8.B, ECF No. 51).)[3] Parker gave the following explanation for sending Bush home on January 15, 2009:

> We had recently had a clerk on the floor, Eleanor Kelly, who had been sent home because she had an open toe cast/boot. Someone on the floor saw Ms. Bush with an open toe boot/cast and called Safety. Safety then called me and notified me that Ms. Bush was working on the floor with an open toe foot/cast which was a violation of safety regulations.
>
> We were in a staff meeting and I told her that she could not be on the floor with an open-toe boot. It would not be fair to allow a supervisor to work on the floor with an open toe boot when we had just sent home a clerk for that same thing. Ms. Bush laughed when I told her and she said, "I guess you caught me. I'll be at home on sick leave."

Parker Supp. EEO Aff. at ¶3. Bush similarly testified that on January 15, 2009, Parker told her that she got a call from safety indicating that an unidentified postal employee had reported that Bush was on the work floor wearing an open-toed boot, and that this had something to do with another employee, Eleanor Kelly. (Bush Dep. at 50 & 56, Pl.'s App. Vol. I., Ex. 2.A, ECF No.

---

[2] Bush denies Defendant's CSMF ¶9 with regard to the reason she was told she had to leave work—that it was a safety concern. *See* Pl.'s 2nd Am. RSMF at ¶9 (ECF No. 41). Nonetheless, Bush admits that Parker stated that the reason was a safety concern (Bush Dep. at 123), but argues that the real reason was retaliation and disability discrimination. *See* Pl.'s 2nd Am. RSMF at ¶11. However, Bush's citations to the record do not support her denial.

[3] Indeed, Parker testified that she believed she was on vacation for part of the first two weeks in January 2009. (Parker Dep. at 44-45, Ex. 1 attached to Def.'s Resp. to Pl.'s Stmt. of Add'l Facts,

28 at 29; Parker Dep. at 106-108, 112, ECF No. 51.)

Consequently, Bush left the Wilkinsburg Postal facility on January 15, 2009 and did not return until after she received a return to duty letter from Parker dated April 17, 2009. (Def.'s CSMF ¶12.)[4] After receiving the April 17, 2009 letter, Bush reported for work on April 20, 2009. (Def.'s CSMF ¶13.)[5] Because Bush was still wearing the open-toed boot on her right foot when she reported to work on April 20, 2009, Parker sent her home and told her not to return until she was not wearing the open-toed boot. (*Id.* at ¶14.)[6] From January 15, 2009 until June 8, 2009, Bush did not provide any medical documentation that restricted her ability to wear a closed-toe shoe while at work. (*Id.* at 15.)[7]

On the evening of June 8, 2009, Bush was seen by Postal employee Beverly Streitman, R.N., at the Postal Service Health Unit. Bush presented Nurse Streitman with a prescription note from Dr. Lenz dated May 28, 2009, stating: "Please allow patient to wear walking cast @ work." (*Id.* at 16.) Nurse Streitman completed the right side portion of Postal Form 3967 by repeating Dr. Lenz's prescription note regarding the work restrictions. (*Id.* at ¶17.) Nurse

ECF No. 46-1.)

[4] Bush denies this statement stating only that she was not allowed to work because of retaliation and discrimination. Plaintiff's denial is not responsive to Defendant's CSMF and consists of argument. Therefore, Defendant's CSMF in ¶12 is deemed admitted for purposes of summary judgment. *See* W.D. LCvR 56.B.1, C.1.b., and E.

[5] In her EEO Investigative Affidavit dated January 16, 2010 ("Bush EEO Aff."), Bush stated that she reported to work on April 21, 2009 (ECF No. 28 at 37), but subsequently, she admitted in her Second Amended Responsive Statement of Material Facts to Defendant's Concise Statement of Material Facts, Paragraph 13, that she reported to work on April 20, 2009 (ECF No. 41 at ¶13).

[6] Bush denies the reason she was sent home on April 20th, *arguing* that the real reason was retaliation and discrimination. Thus, Defendant's CSMF in ¶14 is deemed admitted for purposes of summary judgment. *See* Note 4, *supra.*

[7] Bush does not directly respond to this statement, but states that no medical excuse was obtained until May 28, 2009 because she was never asked for one. Thus, Defendant's CSMF in ¶15 is deemed admitted for purposes of summary judgment. *See* Note 4, *supra.* However, the 4/17/09 Return to Duty Notice belies her assertion that she was never asked for medical documentation. (Pl.'s App. Vol. 1, Ex. 2.C at ¶¶16-18, 20, ECF No. 28 at 38; *see also* Parker Dep. at 122, ECF

Streitman, knowing that an open-toed cast was not permitted by postal safety regulations (Streitman Dep. at 25, Def.'s Ex. G, ECF No. 25-7 at 10), also noted in Bush's health unit record that she "must be kept in environment free from harm" (Bush's Postal Service Health Unit Records, Def.'s Ex. F, ECF No. 25-6 at 5). Nurse Streitman testified that she did not give Bush permission to return to work upon presentation of the prescription note from Dr. Lenz, but stated that it was up to Bush's supervisor as to whether Bush would be allowed to return to work with the restriction noted by Dr. Lenz.[8] (Streitman Dep. at 35-36, Pl.'s App. Vol. I, Ex. 15.B, ECF No. 28-1 at 59.)

On June 9, 2008, Bush returned to work at the Wilkinsburg Postal facility and resumed her duties as a Supervisor of Customer Service, utilizing the open-toed walking boot in a sedentary position, but changing into a closed-toe shoe while present on the work floor. (Def.'s CSMF ¶19; Bush Dep. at 140; Dep. of Mike Cafaro ("Cafaro Dep.") at 34, Pl.'s App. Vol. 1, Ex. 12.E, ECF No. 28-1 at 57.) Bush discontinued using the open-toed boot/cast approximately one month later. (Def.'s CSMF ¶19.) More specifically, Bush stated in her Timeliness Affidavit dated 6/27/09 and filed with the EEOC that her cast was completely removed on 6/19/09. (Pl.'s Timeliness Aff. at 4, Def.'s Ex. C, ECF No. 25-3 at 6.)

### Reasonable Accomodation

Bush believes that a "reasonable accommodation" by the Postal Service, while she was temporarily restricted to the use of the walking boot, would have been to just allow her to continue working at the Wilkinsburg Postal facility while wearing the open-toed boot. (*Id.* at ¶20.) Although Bush never made any request for a reasonable accommodation from the Postal

---

No. 46-1 at 7.)

[8] Bush disputes that this decision was delegated to a manager or supervisor, but fails to cite to any support in the record for this denial. *See* Pl.'s 2nd Am. RSMF at ¶18.

Service other than to continue working in the same capacity at the Wilkinsburg Postal facility while wearing her open-toed boot (*id.* at ¶21), she claims that her labor representative, Bill Weber, asked management to accommodate her in some other area (Bush Dep. at 123-24). Bush contends that it was her manager's (Parker's) responsibility to offer a reasonable accommodation "upon observing difficulty[,]" citing to Postal Service Handbook EL-307, <u>Reasonable Accommodation, An Interactive Process</u>, §§11 & 21 (October 2008) ("Handbook EL-307").[9] (Pl.'s 2nd Am. Resp. Stmt. Mat. Facts at ¶21.)

<u>**Alleged Comparator**</u>

Bush has also alleged that a younger, former employee, Shawnee Young, was allowed to continue working at the Wilkinsburg Postal facility while wearing an open-toed cast. (Def.'s CSMF ¶22.) Ms. Young was 33 years old in February and March of 2009. (Pl.'s App. Vol. 1, Ex. 2.C at 000194, ECF No. 28 at 42.) Ms. Young was a transitional employee who suffered an "on the job injury" necessitating "limited duty" for a period of time during which she only answered the telephones "away from the work floor." (*Id.* at ¶23.)[10] Bush has alleged age discrimination on the basis that her supervisor, Parker, was older than she and also allowed a younger employee (Shawnee Young) to continue working while needing to utilize "crutches and a walking cast of some sort." (*Id.* at ¶24.)[11] Parker testified, however, that she was not aware of Bush's age. (Def.'s CSMF ¶27 (citing Parker Dep. at 59); *see also* Parker EEO Investigative Affidavit dated 1/25/10 ("Parker EEO Aff.") at ¶¶4,19, & 22(B), ECF No. 25-9 at 2 & 5.)[12] At

---

[9] Section 11 of Handbook EL-307 does not support this statement and, as explained *infra,* Defendant was not required to engage in the interactive process.

[10] Bush's response to Def.'s CSMF ¶23 admits only a portion of this statement without any further explanation, and thus, is deemed to be an admission of the entire CSMF.

[11] Bush's response to Def.'s CSMF ¶24 admits only a portion of this statement without any further explanation, and thus, is deemed to be an admission of the entire CSMF.

[12] Bush denies Def.'s CSMF ¶27 but her only support for this denial is the *argument* that Parker

the time of the alleged discriminatory acts, Parker was 53 years old. (Def.'s CSMF ¶28.)

**Alleged Retaliatory Conduct**

Prior to the instant action, Parker was not one of the individuals mentioned in any prior EEO case filed by Bush. (*Id.* at 25; Bush Dep. at 37.)[13] Moreover, Parker testified that she was not aware of any of Bush's prior EEO activity, nor did she ever see Bush's employment file. (Def.'s CSMF ¶26; *see also* Parker Dep. at 43, 59; Parker EEO Aff. at ¶¶5-6, 20, Def.'s Ex. I, ECF No. 25-9 at 2 & 5.)[14]

Bush testified that she reported delay mail attributable to manager Parker between January 8, 2009 and January 12, 2009, but she does not state to whom she reported the delay mail. (Pl.'s 2nd Am. RSMF ¶31.) In addition, another supervisor at the Wilkinsburg Postal facility, Christine Carter, testified that she reported delay mail at the Wilkinsburg Postal facility to the OIG[15] and Mike Cafaro while Parker was the acting manager, but Carter did not indicate when she made the report. (Carter Dep. at 11-12, Pl.'s App. Vol. 1, Ex. 2.D(3), ECF No. 28-1 at 26; Carter email dated 8/5/10, Pl.'s Supp. App. Vol. 4, Ex. 8.C(3), ECF No. 51 at 10.)

On April 16, 2009, Plaintiff requested pre-complaint EEO counseling. (Pl.'s App. Vol. 1, Ex. 2.C, ECF No. 28 at 35 & 37.) Thereafter, Plaintiff was given an initial interview on May 4, 2009 by EEO Dispute Resolution Specialist Toni Tait. (*Id.*, ECF No. 28 at 35.) After the interview on May 4, 2009, Tait notified Parker and Cafaro by email that Bush had filed an EEO

---

knew or should have known her age from birthday celebrations. The rest of Bush's response to Defendant's CSMF ¶27 is not responsive, and therefore, this CSMF is deemed admitted for purposes of summary judgment.
[13] Bush denies this CSMF but her only support for this denial is the *argument* that Parker knew or should have known of the prior EEO activity from a review of her file. The rest of Bush's response to Defendant's CSMF ¶25 is not responsive, and therefore, this CSMF is deemed admitted for purposes of summary judgment.
[14] *See* Note 13, *supra.*
[15] "OIG" refers to the Office of the Inspector General.

complaint (age) naming them as the responsible management officials. (Pl.'s Supp. App., Ex. 9E(2)(b), ECF No. 51 at 12-13.) On May 11, 2009, Parker responded via email to Tait's May 4, 2009 email regarding Bush's EEO complaint that two other employees (Eleanor Kelly and Shawnee Young) were allowed to work with inappropriate footwear. (*Id.*, ECF No. 51 at 15.)

In the meantime, Parker sent a Return to Duty Notice dated April 17, 2009 to Bush informing her that the office records indicated she had not reported to duty since April 4, 2009,[16] and that since she had not obtained permission in advance for the absence, she was to return to work immediately, but if she was unable to do so, to personally contact Parker immediately to discuss the reasons for her inability to return to duty. (Pl.'s App. Vol. I, Ex. 2.C, ECF No. 28 at 38.) Bush was further advised to furnish acceptable documentation to support her absence within five days of receipt of the notice. (*Id.*) In addition, Parker informed Bush that absences of twenty-one (21) calendar days or more due to non-occupational illness/injury must be cleared by the Postal Medical Unit before she would be permitted to return to duty, and that she must call the Medical Unit for instructions prior to reporting back to work. (*Id.*) On April 20, 2009, Bush reported to work unexpectedly, still wearing the open-toed boot and without obtaining clearance from the Postal Medical Unit, and Parker sent her home. Plaintiff did not provide Parker with any medical documentation regarding her absence at that time. (*Id.*, ECF No. 28 at 40.)

## Postal Service Safety Guidelines/Regulations

Defendant's safety regulations preclude employees from wearing open-toed footwear of any kind on the work floor. (Def.'s CSMF ¶10.)[17] The Supervisor's Safety Handbook EL-801,

---

[16] This date appears to be when Plaintiff's sick leave ran out.

[17] Bush denies this statement *arguing* that the Postal Service's safety regulations are not applicable to "reasonable accommodation' or medical devices or walking casts." Pl.'s 2nd Am.

issued by the Postal Service in June 2008 ("Handbook EL-801"), states that "open-toed" . . .

shoes . . . must not be worn by Postal Service employees on the job." Handbook EL-801, §8-8.4

at 55 (Def.'s Ex. J, ECF No. 25-10 at 3.) *See also* Dep. of Timothy Fox ("Fox Dep.") at 13-15

(Def.'s Ex. K, ECF No. 25-11). Handbook EL-801 further provides:

> The supervisor with jurisdiction over a work location is
> responsible for determining whether a particular style of shoe is
> acceptable on the workroom floor. The supervisor must inform
> employees wearing unacceptable footwear about Postal Service
> policy on shoes and prohibit employees from wearing such
> footwear in work areas.

Handbook EL-801, §8-8.4 at 55. In addition, the Postal Employee's Guide to Safety, Handbook

EL-814, also issued in June 2008 by the Postal Service ("Handbook EL-814"), instructs

employees not to wear on the work floor, inter alia, "open shoes (including open sides, toes, or

heels)" in order to "eliminate slips, trips and falls[.]" Handbook EL-814, §VI, part A.4 at 14-15

(Def.'s Ex. J, ECF No. 25-10 at 8-9). *See also* Fox Dep. at 13-15. Timothy Fox, Manager of

Safety for the Postal Service, also testified that the ban on open-toed shoes in industrial settings,

like the work floor of the postal facilities, is also required by OSHA regulations. (Fox Dep. at

15.)

**Procedural History**

Bush filed a timely EEO formal complaint on May 23, 2009. (Am. Compl. ¶7, ECF No.

9.) The Postal Service issued a Notice of Final Action regarding Bush's administrative EEO

complaint of discrimination on July 11, 2011 (*id.* at ¶8; Def.'s Ans. to Am. Compl. ¶8, ECF No.

13), and Bush filed this timely civil action on October 7, 2011. Discovery has been completed

---

RSMF at ¶10. However, Bush provides no citation to the record in support of this statement;
moreover, it constitutes legal argument. Therefore, Defendant's CSMF at ¶10 is deemed
admitted. *See Note 4, supra.*

and Defendant has now moved for summary judgment.  The motion has been fully briefed and responded to, and thus, is ripe for disposition.

## II.  LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact.  *Nat'l State Bank v. Fed'l Reserve Bank of New York*, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing *Celotex,* 477 U.S. at 323-25).  Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963).  *See also Orsatti v. New Jersey State Police,* 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing *Celotex, supra*).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

247-48 (1986) (emphasis in original). As to materiality, the Supreme Court explained: "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248 (citing 10A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2725, pp. 93-95 (1983)). As to whether an issue of material is genuine, the Court held that it will genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Finally, while any evidence used to support or oppose a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* FED. R. CIV. P. 56(c)(2); *Celotex*, 477 U.S. at 324; *J.F. Feeser, Inc., v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

III. **DISCUSSION**

A. **Age Discrimination Claim**

The Age Discrimination in Employment Act mandates that "[a]ll personal actions affecting employees . . . who are at least 40 years of age . . . in the United States Postal Service . . . shall be free from any discrimination based on age." 29 U.S.C. §633a(a). To establish a prima facie case of age discrimination, a plaintiff must produce evidence that is sufficient to convince a reasonable jury that she (1) was a member of the protected class, i.e., was 40 years of age or older, (2) suffered an adverse employment action, (3) was qualified for the job, and (4) was treated less favorably than a sufficiently younger person under circumstances giving rise to an inference of age discrimination. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d

Cir. 1997) (citing *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir. 1995)). Only the fourth element of Plaintiff's prima facie case is at issue here.

In order to satisfy the fourth element, Bush must show that similarly situated younger employees were treated more favorably than she. *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 798 (3d Cir. 2003)(citing *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 352 (3d Cir. 1999); *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15 (1977)). Bush has identified one possible comparator—Shawnee Young—whom she claims was allowed to continue working at the Wilkinsburg Postal facility while utilizing "crutches and a walking cast of some sort," and was younger than Bush. However, Defendant argues that Ms. Young is not a proper comparator, and therefore, Bush has failed to establish the fourth element of her prima facie case.

Bush submits that Ms. Young is a valid comparator because Young was using both a walking cast and crutches on the work floor in February and March of 2009, while Bush was off work. In support of this counter-statement, Bush offers that "this information was related to her by word-of-mouth about mid-March 2009." Pl.'s Opp'n Br. at 13 (ECF No. 45 at 13). This statement does not create an issue of fact, however, because it constitutes inadmissible hearsay. Fed. R. Evid. 801(c). Rule 56(c)(2) requires that the material cited to dispute a fact must be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); *see also Robinson v. Hartzell Propeller Inc.,* 326 F.Supp. 2d 631, 645 (E.D.Pa. 2004) (quoting *Philbin v. Trans Union Corp.,* 101 F.3d 957, 961 (3d Cir. 1996)) (in opposing summary judgment, the evidence does not have to be in admissible form at the summary judgment stage, but the evidence must be "'capable of being admissible at trial'"). Bush's statement does not meet this requirement for two reasons: (1) Bush could not have personally observed Ms. Young on the work floor wearing a walking cast because she admits that she was off work in February and

March of 2009, and therefore, she cannot be the declarant, and (2) Bush is attempting to offer statements from other employees to prove the truth of the matter asserted, without (a) identifying the employee(s) who allegedly related the information, and (b) providing an affidavit from such person(s). As such, Bush cannot rely on the hearsay statement alone to create a material issue of fact as to whether Ms. Young was actually present on the work floor wearing an open-toed cast, especially where Plaintiff's own photographic evidence belies her counter-statement.

Bush also attempts to create an issue of fact as to whether Ms. Young is a valid comparator by relying on the photographs of Ms. Young taken in March of 2009 (Ex. 24.B(1), Pl.'s App., Vol. 1, ECF No. 28-1 at 60-62), which she claims clearly show Ms. Young wearing an open-toed walking cast on her left foot. (Pl.'s Opp'n Br. at 14.) The Court has reviewed the original photographs,[18] and they show a female wearing a brace on the lower half of her left leg, using crutches. The woman in the photographs also appears to be wearing closed-toe footwear of the athletic shoe variety, not a walking cast. Significantly, these photographs were taken in what appears to be a parking lot, not on the workroom floor of the Wilkinsburg Postal facility.[19] Thus, Plaintiff's photographic evidence does not show Ms. Young wearing an open-toed walking cast, let alone wearing such on the workroom floor of the Wilkinsburg Postal facility.

Bush further attempts to create a material issue of fact by arguing that Parker's "false statement" in her Supplemental EEO Investigative Affidavit—that Young only had a leg cast on and wore regular shoes—is rebutted by Plaintiff's photographic evidence. (Pl.'s Opp'n Br. at

---

[18] The scanned copies of the photographs that were filed electronically lacked sufficient detail for the Court to be able to determine whether they supported Plaintiff's position. Therefore, the Court telephonically requested Plaintiff's counsel to deliver the original photographs to chambers, which he did via U.S. Mail. The original photographs were received in chambers on June 14, 2013.

[19] Plaintiff testified that she took these photographs of Ms. Young as she was walking out of the Wilkinsburg Post Office. (Pl.'s Dep. at 74.)

14; Parker Supp. EEO Aff. at ¶12, ECF No. 25-9 at 8.) However, as this Court found above, Plaintiff's photographic evidence actually belies this argument. Thus, Plaintiff has not produced any evidence to support her assertion that Parker's statement in the Supplemental EEO Investigative Affidavit was false.

Accordingly, the Court finds that Plaintiff has not produced any evidence to show that a material issue of fact has been raised as to whether Ms. Young was actually present on the work floor wearing an open-toed walking cast. The only admissible evidence that exists consists of Parker's deposition testimony and her Supplemental EEO Investigative Affidavit, which together support the finding that Ms. Young was not present on the work floor but was given limited duty of answering the phones because of her on-the-job injury (Parker Dep. at 23-25; Parker Supp. EEO Aff. at ¶12, ECF No. 25-9 at 8), and Plaintiff's photographs, which show, presumably, Ms. Young, wearing a leg brace on her left leg and closed-toe athletic shoes, with crutches, in a parking lot.

Moreover, as Defendant points out in his brief, other dissimilarities between Bush and Ms. Young support the conclusion that Ms. Young is not a valid comparator. Unlike Plaintiff, Ms. Young's injury was work-related and, as such, the Postal Service was obligated to provide "limited duty" work for Ms. Young, which consisted of answering the telephones *away from the work floor* while she was unable to perform her regular duties of delivering mail. On the other hand, Bush was not injured at work, and therefore, the Postal Service was not obligated to provide "limited duty" work for her. (Streitman Dep. at 21, Def.'s App. Ex. G, ECF No. 25-7 at 6.) Consequently, as Supervisor of Customer Service, Bush was required to be present on the work floor, and thus, was subject to Postal and OSHA safety regulations which precluded the use

of open-toed footwear on the work floor. (Def.'s CSMF ¶10; Handbook EL-801, §8-8.4 at 55; Handbook EL-814, §VI, part A.4 at 14-15; Fox Dep. at 13-15.)

In light of this uncontradicted evidence, the Court concludes that a reasonable jury could not find that Ms. Young is a valid comparator. As such, and because Plaintiff has failed to proffer any other Postal employees who were younger and treated more favorably than she under similar circumstances, the Court concludes that a reasonable jury could not find that Plaintiff has established the fourth prong of her prima facie case of age discrimination.[20] Accordingly, the Court will grant Defendant's motion for summary judgment as to Plaintiff's age discrimination claim.

### B.   Disability Discrimination Claim Under the Rehabilitation Act

Under the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.* ("Rehabilitation Act"), federal agencies are prohibited from "'discriminating against qualified individuals with a disability in matters of hiring, placement, or advancement.'" *Wishkin v. Potter,* 476 F.3d 180, 184-85 (3d Cir. 2007) (quoting *Shiring v. Runyon,* 90 F.3d 827, 830-31 (3d Cir. 1996)); *see also* 29 U.S.C. §791. The Rehabilitation Act expressly provides that the standards set forth in the Americans With Disabilities Act of 1990, 42 U.S.C. §12111 *et seq.*, apply to employment discrimination claims against federal agencies, including the U.S. Postal Service. *Wishkin,* 476 F.3d at 184 (citing 29 U.S.C. §791(g)). In order to establish a prima facie case of discrimination under the Rehabilitation Act, the employee must show: "'(1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated

---

[20] The parties dispute whether Parker actually knew Bush's age. This dispute does not preclude summary judgment for Defendant, however, because even giving Plaintiff the benefit of doubt and assuming Parker knew her age, Plaintiff has failed to show that a reasonable jury could draw

or otherwise prevented from performing the job.'" *Wishkin*, 476 F.3d at 184-85 (quoting *Shiring,* 90 F.3d at 831). "The existence of a prima facie case of employment discrimination is a question of law that must be decided by the court but the prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." *Id*. at 185 (citing *Sarullo v. United States Postal Serv.,* 352 F.3d 789, 797–98 (3d Cir.2003) (per curium)).

A discrimination claim under the Rehabilitation Act is analyzed under the familiar burden shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Wishkin,* 476 F.3d at 185. Under this framework, initially, the plaintiff bears the burden of establishing a prima facie case of discrimination. *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802). If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate non-discriminatory reason for the adverse employment action. *Id*. Once the employer carries its burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons proffered by the employer were merely a pretext for discrimination, and not the true motivation for the adverse employment action. *Id.* (citing *Burdine*, 450 U.S. at 252-53; *McDonnell Douglas,* 411 U.S. at 804). To demonstrate that the employer's proffered reason is pretextual, the plaintiff must "cast [ ] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication ... or ... allow[ ] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir.1994). Thus, a plaintiff may defeat a motion for summary judgment at step three by either "(i) discrediting the employer's

---

an inference of age discrimination from the record evidence here.

proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id*. at 764.

## Plaintiff's Prima Facie Case

The Rehabilitation Act is construed in conjunction with the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), as amended,[21] with regard to various provision of the ADA, including those defining the term "disability." 29 U.S.C. §§ 791(g), 794(d). Under the Rehabilitation Act, an "individual with a disability" is defined as someone who (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 29 U.S.C. §705(20)(B); 42 U.S.C. §12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(2)(A).

In determining whether an individual meets the definition of disability under the first prong of Section 12102(1), Congress has directed that the term "substantially limits" be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. §1630.2(j)(1)(i) (2012). Nonetheless, although Congress did not intend "substantially limits" to be a demanding standard, "not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. §1630.2(j)(l)(ii) & (iii) (2012). *See also* 154 Cong. Rec. S8840 (2008) (statement of Sen. Tom Harkin ("We reaffirm that not every

---

[21] The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009. Pub. L. No. 110-325, 122 Stat. 3553, 3559. Because the alleged acts forming the basis of Plaintiff's disability discrimination claim occurred after January 1, 2009, the

individual with a physical or mental impairment is covered by the first prong of the definition of disability in the ADA.")[22]   As the district court noted in *Koller v. Riley Riper Hollin & Colagreco*:

> Although Congress sought to abrogate the "significantly or severely restricting" requirement as it pertained to the "substantially limits" factor of the ADA, the ADAAA still requires that the qualifying impairment create an "important" limitation. 29 C.F.R. pt. 1630 App. (2011). *See also* H.R.Rep. No. 110–730 (2008) ("[T]he limitation imposed by an impairment must be important ...."). Therefore, even under the relaxed ADAAA standards, a plaintiff is still required to [demonstrate] a substantially limiting impairment. *See Fleck* [*v. WILMAC Corp.*, No. 10–5562], 2011 WL 1899198, at *4–5, 2011 U.S. Dist. LEXIS 54039, at *12–15 [E.D.Pa. May 19, 2011)].

850 F.Supp. 2d 502, 513 (E.D.Pa. 2012).

The ADAAA and the regulations promulgated by the EEOC make clear that the primary focus in cases brought pursuant to the ADA (and the Rehabilitation Act) should be whether the employer has complied with its obligations, and not whether the individual meets the definition of disability.   *EEOC Interpretive Guidance on Title I of the ADA*, 29 CFR pt. 1630 App., §1630.1(c) (2011) (citing ADAAA §2(b)(5), Pub. L. 110-325, S. 3406, 122 Stat. 3553 (2008)). However, an individual claiming disability discrimination still bears the burden of establishing a prima facie case.  It is a relatively low burden after the 2008 amendments, but one that must be satisfied in order to withstand summary judgment.

---

2008 amendments to the ADA govern this case.

[22] In fact, it appears that Congress adopted the ADAAA in order to specifically address certain impairments that were not receiving the protection which Congress intended, such as cancer, HIV-AIDS, epilepsy, diabetes, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities. *Koller v. Riley Riper Hollin & Colagreco,* 850 F.Supp. 2d 502, 513 (E.D.Pa. 2012) (citing 154 Cong. Rec. H8286 (2008) (statement of Rep. George Miller)).

### 1. Individual With A Disability

Bush appears to be predicating her disability discrimination claim on Defendant's alleged failure to provide a reasonable accommodation and Parker's use of sick or vacation days for Plaintiff's leave. Defendant has moved for summary judgment on her disability discrimination claim arguing that Bush has not and cannot establish that she is a qualified individual with a disability under any of the definitions of disability in Section 12102(1). The Court agrees with Defendant.

Based on Congress' mandate to broadly construe the definition of disability, the Court finds that Bush's sprained right ankle/foot would likely constitute a physical impairment, defined as "any physiological disorder or condition, . . . affecting one or more body systems, such as . . . musculoskeletal . . .." 29 C.F.R. §1630.2(h) (2012). Clearly, a "severe sprain" to Plaintiff's right ankle/foot that requires a walking boot would affect her musculoskeletal system.

Next, the Court must determine whether Plaintiff qualifies as a disabled individual under one of the three prongs of Section 12102(1). Under the first prong, "actual" disability, the Court must consider whether the ankle/foot sprain substantially limited Bush's ability to engage in the major life activities of walking or other daily activities.[23] Whether a plaintiff is substantially limited in performing a major life activity is generally a question of fact. *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 763 (3d Cir.2004) (citing *Gagliardo v. Connaught Labs., Inc.,* 311 F.3d 565, 569 (3d Cir. 2002)). Therefore, the key question is whether Bush has proffered sufficient evidence such that a jury could determine that her impairment substantially limited a major life activity.

The EEOC regulations provide guidance as to the meaning of "substantially limits":

---

[23] In her Amended Complaint, Bush alleges that the "severe sprain of her ankle and foot severely

(ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.
. . .

(iv) The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA.

(v) The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis. . . .

29 C.F.R. §1630.2(j)(1)(ii), (iv) & (v). In addition, the regulations provide that the "determination of whether an impairment substantially limits a major life activity is to be made without regard to the ameliorative effects of mitigating measures." *Id.* at §1630.2(j)(1)(vi).

Thus, with regard to the "actual disability" prong, the test is whether, *at the time of the adverse employment action,* the limitation caused by the impairment was "substantial." *Koller,* 850 F.Supp. 2d at 513 & n. 4 (citing *Fleck v. WILMAC Corp.,* No. 10-5562, 2011 WL 1899198, at *5 (E.D.Pa. May 19, 2011) ("The Court's relevant determination . . . is whether the plaintiff had a disability at the time of the adverse employment decision.") In making this determination, the focus is on how a major life activity is substantially limited. 29 C.F.R. §1930.2(j)(4)(iii). Relevant to this inquiry is the degree of limitation caused by the impairment and the nature of the impairment at the time of the adverse employment action. *Koller,* 850 F.Supp. 2d at 513.

---

compromised her ability to walk and engage in other daily activities." Am. Compl. ¶28.

Defendant argues that under the "actual" prong of the definition of disability, Bush has not put forth any evidence showing that her sprained right ankle/foot was an impairment substantially limiting a major life activity, and therefore, she has failed to show that she had an actual disability at the time of the alleged adverse action. In support, Defendant submits that the use of a boot alone does not show that Bush was substantially limited with regard to a major life activity. Defendant further submits that a temporary, non-chronic impairment of less than seven months duration, such as Plaintiff's sprained ankle/foot, does not satisfy the definition of disability under the "actual" prong, even after the 2008 amendments. In support, Defendant cites *Poper v. SCA Americas, Inc.*, Civ. A. No. 10-3201, 2012 WL 3288111, at *8 (E.D.Pa. Aug. 13, 2012), applying the ADAAA standard, and *McFarlan v. Ivy Hill SNF, LLC,* 675 F.3d 266, 274 (3d Cir. 2012) and *Colwel v. Suffolk county Police Department,* 158 F.3d 635, 646 (2d Cir. 1998),[24] applying the pre-2008 amendments standard. In response, Plaintiff submits only that Handbook EL-307 does not require analysis of the projected duration of the impairment.

Based on the evidence of record, the Court is constrained to agree with Defendant. Although Plaintiff is correct that handbook EL-307 does not contain a duration requirement, the Handbook does not govern the determination of whether Bush meets the "actual" prong of the definition of disability. Rather, the Rehabilitation Act, ADAAA, regulations, and case law interpreting them govern that determination. Neither the statutes nor the EEOC regulations contain a duration requirement for determining whether an individual meets the definition of a disability under the "actual" prong. To the contrary, the regulations provide that the "six-month 'transitory' part of the 'transitory and minor' exception to the 'regarded as' coverage in [29 C.F.R.] §1630.15(f) does not apply to the definition of 'disability' under . . . the 'actual

---

[24] *Colwel* was superseded on other grounds by 42 U.S.C. §12102(3)(A), as noted in *Ragusa v.*

disability' prong . . . or . . . the 'record of' disability prong . . .." 29 C.F.R. §1630.2(j)(1)(ix). However, that does not preclude the Court from considering the duration of the impairment. Rather, duration is but one factor the Court takes into consideration in determining whether a major life activity is substantially limited by the impairment. *See* 29 C.F.R. part 1630 App., §1630.2(j)(1)(ix) ("'[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe.'" (quoting Joint Hoyer-Sensenbrenner Statement on the Origins of the ADA Restoration Act of 2008, H.R. 3195 (reviewing provisions of H.R. 3195 as revised following negotiations between representatives of the disability and business communities) at 5)).

Recently, several courts have considered this issue applying the new ADAAA definition of disability. For example, in *Poper, supra,* cited by Defendant, the plaintiff testified in his deposition that his "'back problems constitute[d] a disability because they sometimes limited his ability to brush his teeth, bend, walk or lift more than 30 pounds without really feeling a pain.'" 2012 WL 3288111, at *2. The district court found that although plaintiff had a long history of back problems and treatment related to managing those problems, the only evidence of impairment or limitation relating to his back while working for defendant consisted of a single notation in the hospital discharge summary of general back pain following a car accident, for which he was prescribed ibuprofen. *Id.* at *8. Noting that a "temporary non-chronic impairment of short duration is not a disability covered under the ADA" (citing *McFarlan,* 675 F.3d at 274),[25] the district court concluded that the evidence proffered by plaintiff "would not allow a

---

*Malverne Union Free School District,* 381 F. App'x 85, 88 (2d Cir. 2010).

[25] Applying the pre-ADAAA disability standard, the court of appeals held that a temporary lifting restriction, which was removed only four months after it was first imposed, is the "very

reasonable juror to conclude that plaintiff's limitations were anything more than temporary impairments." *Id.* at *8-9. The *Poper* court reasoned that plaintiff's deposition testimony by itself was insufficient to overcome contradictory medical records and a general absence of supporting evidence. *Id.* at *9. Thus, the court held that plaintiff failed to show he had an actual disability under the ADA. *Id.*

Also, in *Koller,* the plaintiff alleged that he had trouble staying awake and concentrating for two weeks post-surgery due to pain and being heavily medicated; that he returned to work while he was still in pain and medicated, even though he had difficulty moving and driving because of a cast on his knee to reduce movement; and that twice a week he was allowed to report to work late after his physical therapy sessions. 850 F.Supp. 2d at 513. The district court held that these alleged limitations did not constitute substantial limitations on a major life activity. *Id.* (footnote omitted). In addition, the court rejected plaintiff's argument that an ACL tear that requires surgery necessarily qualifies as a disability under the ADA,[26] concluding that

---

definition of . . . a [temporary] non-chronic impairment." *McFarlan,* 675 F.3d at 274 (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002); *Colwell,* 158 F.3d at 646 ("holding that an impairment lasting seven months was too brief in duration to qualify as an ADA-qualifying disability")).

[26] The plaintiff in *Koller* relied on *Tish v. Magee-Women's Hospital of the University of Pittsburgh Medical Center,* Civ. A. No. 06-820, 2008 WL 4790733 (W.D.Pa. Oct. 27, 2008), wherein the plaintiff similarly suffered from an ACL tear which required surgery and was determined to have an actual disability under the pre-2008 amendments to the ADA. As the *Koller* court aptly pointed out, the facts surrounding Tish's injury were clearly distinguishable and demonstrated that her ACL tear substantially limited major life activities. Unlike the plaintiff in *Koller,* in *Tish* the evidence showed that the plaintiff remained out of work for six weeks following the surgery and continued to experience discomfort which required a brace and physical therapy; five months post-surgery, the plaintiff was still unable to work full-time and her doctor noted continued pain and swelling from the injury; she was unable to cook or clean for six months and after that, she was only able to cook and clean with both pain and need for frequent breaks; she relied on friends to do her grocery shopping for six weeks while she was unable to drive; she struggled to walk up and down steps and to carry laundry or groceries three months after surgery; whenever she engaged in physical activities, her leg swelled preventing her from standing or walking for even a short period of time, and she required a rest after standing or

plaintiff "ha[d] not alleged facts regarding his personal condition, which would compel this Court to find that his injury rose to the level of a 'disability' for purposes of the Act. Allegations of 'difficulty' performing acts such as moving and driving 'because of the [cast] on his knee,' simply do not rise to the requisite level." *Id.* at \*514 n. 7. It bears noting that the district court in *Koller* dismissed the plaintiff's ADA claim on a motion to dismiss, which is a lesser standard that a motion for summary judgment. Here, even after a fully developed record, Bush has likewise failed to provide any evidence to show that her ankle/foot sprain limits the major life activities of "walking or other daily activities."

In another case applying the new disability standard, *Gray v. Walmart Stores, Inc.,* Civ. A. No. 7:10-cv-171-BR, 2011 WL 1831780 (E.D.N.C. May 12, 2011), the district court held that the plaintiff failed to allege facts to demonstrate that she suffered from an actual disability. *Id.* at \*9. Ruling on motions to dismiss, the court found that plaintiff provided only brief descriptions of the physical conditions (hypertension, back injury, bowel problems, exacerbation of left shoulder injury, and right shoulder pain) that allegedly limited her ability to work. *Id.* at \*9-10. The district court held that:

> Aside from these extremely brief descriptions of the physical conditions that allegedly limit her ability to work, plaintiff provides practically no details about her impairment. The court has no further information on the severity or type of plaintiff's medical limitations. Plaintiff describes her condition with so few details that the court cannot infer whether the activity limited by plaintiff's impairment is a major life activity or whether plaintiff's impairment substantially limits a major life activity. Thus, plaintiff

---

walking for only ten to fifteen minutes. *Koller,* 850 F.Supp. 2d at 514 n. 7 (citing *Tish,* 2008 WL 4790733, at \*7-9). In addition, Tish continued to have limitations after the passage of six months, including difficulty carrying her books to class, getting to classes on time, walking up and down stairs, and standing or walking for more than 20 to 30 minutes without a break. *Tish,* 2008 WL 4790733, at \*9. In fact, the medical evidence revealed that three years after her ACL tear, she continued to suffer some injury-related limitations, but they were not as severe as the first year after her injury. *Id.*

has alleged no facts from which the court can conclude that she has the requisite disability to qualify her for relief under 42 U.S.C. § 12102(1)(A).

*Id.* at *10 (footnote omitted).  Similarly here, Bush has failed to proffer any evidence, medical or otherwise, as to the severity of her impairment and/or its limitations, making it highly unlikely that a reasonable jury could conclude that she was actually disabled under Section 12102(1)(A).

Finally, in *Fleck v. WILMAC Corp.*, Plaintiff brought a disability claim under the ADA alleging that her *chronic* ankle injury qualified as a disability because it substantially limited her ability to walk and stand.  The *Fleck* court held that the "relevant determination . . . is whether the plaintiff had a disability *at the time of* the adverse employment action."  *Id.* at *5 (citing *Rahsman v. Dewberry-Goodkind, Inc.,* No. Civ. A. 05-1931, 2007 WL 188571, at *6 (M.D.Pa. Jan. 22, 2007)) (emphasis in original).  Applying that rule, the district court denied a motion to dismiss the ADA claim finding that the plaintiff's allegations as to her disability were sufficient to withstand the pleading requirements of a motion to dismiss under Rule 12(b)(6). *Id.* at *5.   In her complaint, plaintiff alleged that she suffered an ankle injury in March of 2006 that resulted in chronic medical problems which prevented her from standing for more than an hour or walking for  more than a half mile.  Prior to her employment with WILMAC, plaintiff had surgery on her ankle, but it failed to resolve the injury, necessitating that she wear a cam boot to allow her to stand for the time required by her job when she was first hired in August of 2007.  One year later, plaintiff informed her employer that she needed further surgery on her ankle, which eventually took place on November 20, 2008, at which time she began her FMLA leave.  Approximately two and one-half months later, plaintiff informed her supervisor that she was able to return to work for four hours per day, and submitted a note from her physician indicating that she could increase her hours over a six week period.   The next day, plaintiff's supervisor

informed her that she was being terminated because she was unable to work an eight-hour day and instructed her not to return to work the following week when her FMLA leave ended.

*Fleck* is distinguishable from the case at bar on several fronts. First, Fleck's injury was a chronic impairment, requiring two surgeries, and pre-dated her employment by 17 months and continued for the entire 18 months of her employment with WILMAC. By contrast here, it appears that Bush required only the use of a walking cast/boot for approximately 16 days as of 1/15/09—the date of the first alleged adverse employment action—and, had been using the walking cast/boot for approximately 111 days (less than four months), as of 4/20/09—the date of the second alleged adverse employment action. Second, there is no evidence in the summary judgment record that Bush received any other treatment or had any restrictions as to walking or "other daily activities" while wearing the boot. Bush has not stated what her limitations are or how they substantially limit the major life activities of walking and "other daily activities" at the time of the alleged adverse employment actions—January 15 and April 20 of 2009. Third, because the instant matter is before the Court on a summary judgment motion, Bush's burden is greater than the plaintiff in *Fleck*, as she must point to evidence in the record that supports a finding of such limitations, and this she has failed to do.

Thus, the Court finds that Bush's ankle/foot sprain more closely resembles the temporary, non-chronic impairments sustained by the plaintiffs in *Poper, Koller,* and *Gray*, and therefore, Bush has failed to produce evidence which would allow a reasonable jury to conclude that her impairment substantially limits a major life activity. At the time Plaintiff was first sent home from work on January 15, 2009, Plaintiff had been wearing the open-toed boot for approximately two weeks at work and was performing her regular duties without restriction. Moreover, Bush testified that she was able to drive a car—she simply removed the boot and wore a regular shoe

to drive.  (Pl.'s Dep. at 60.)  Significantly, the record does not contain any testimony from any co-workers or supervisors at the Wilkinsburg Postal facility indicating that they observed Bush having any difficulty performing her job duties during the first two weeks of January 2009.   In addition, Bush had not presented to Parker or anyone else at the Postal Service a note from her treating physician indicating any restrictions on her ability to perform her regular duties at work, until she saw Nurse Streitman on June 8, 2009, at which time Bush presented to her a note from Dr. Lenz dated May 28, 2009.  In that note, Dr. Lenz requested that Bush be allowed to wear a walking cast at work and that she be kept in an environment free from harm.  In fact, there is a complete lack of medical documentation or other evidence as to Plaintiff's ankle/foot sprain. Therefore, on both January 15, 2009 and April 20, 2009, when she was sent home from work, Bush had not made either Parker, Nurse Streitman, or anyone in HR aware of any restrictions imposed by her treating physician due to her sprained right foot.  Bush even admits that she could perform all of the duties of her job description while wearing a walking cast, and that the record contains no evidence that her orthopedic physician ever removed her from full duty. (Pl.'s Opp'n Br. at 11.)[27]

Moreover, Plaintiff has not provided any evidence to show that she required any type of treatment for her sprained foot, other than an open-toed boot, or that she required the use of medication, nor has she provided any evidence to show her level of pain, or the effect, if any of her impairment on her activities of daily living.  She has not even identified the "other daily activities" she claims were limited by her ankle/foot sprain.  By her own testimony she admitted not being restricted in her ability to drive a car.  Accordingly, the Court finds that based on the summary judgment record, a reasonable jury would not be able to conclude that Bush's

---

[27] In essence, by these admissions, Plaintiff is conceding that she was not "actually" disabled.

ankle/foot sprain limited her ability to walk or engage in "other daily activities" in any way, let alone in a substantial way. Thus, Bush has failed to show that her ankle/foot sprain was anything more than a temporary impairment.

Therefore, for the reasons stated above, the Court concludes that a reasonable jury could not find that Bush has shown that she her ankle/foot sprain constitutes an "actual" disability under Section 12102(1)(A).

Next, Bush has not argued, nor does the summary judgment evidence support a finding, that the "record of" a disability prong is implicated here. Thus, no further analysis of this prong is necessary.

Finally, Defendant argues that Bush has failed to show that she was "perceived" as having a disability under the "regarded as" prong of the definition of disability, because her impairment was not transitory or minor. Under the ADA and the Rehabilitation Act, an employer may assert a defense to a charge of discrimination, by an individual claiming a disability under the "regarded as" prong, that the impairment is both transitory *and* minor. 42 U.S.C. §12102(3)(B). *See also* 29 C.F.R. §1630.15(f) (2011). To establish this defense, the regulations provide:

> [A] covered entity must demonstrate that the impairment is both "transitory" and "minor." Whether the impairment at issue is or would be "transitory and minor" is to be determined objectively. A covered entity may not defeat "regarded as" coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor; rather, the covered entity must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor. For purposes of this section, "transitory" is defined as lasting or expected to last six months or less.

29 C.F.R. §1630.15(f).

Defendant submits that the time period for analyzing whether Plaintiff was "regarded as" having a disability began on January 15, 2009, when she was sent home from work for wearing an open-toed cast on the workroom floor, and ended when she returned to work on June 9, 2009, a period of less than five months. As such, Defendant argues that Plaintiff's impairment was transitory or minor, and therefore, she cannot satisfy the "regarded as" definition of disability, based on the exception contained in Section 12102(3)(B).

In response, Plaintiff argues that "Parker, albeit falsely and pretextually, perceived Plaintiff's open-toed cast as disqualifying [her] from her work duties, hence disabling." Pl.'s Opp'n Br. at 11 (ECF No. 45). In support of her argument, Bush submits that "[t]here is no record limitation upon the time during which [she] had to utilize the open-toed cast, hence no six-month limitation on Manager Parker's perception of disability." *Id.* In addition, Bush submits that she "could perform all the duties of her job description . . . wearing a walking cast[, and] there is no evidence that [her] orthopedic physician ever removed [her] from full duty." *Id.*

A review of the record here reveals that at the earliest, Bush's impairment began on or about December 31, 2008, when she visited her treating physician and was put into a walking cast/boot. It is undisputed that she returned to work on June 9, 2009, and although she wore the open-toed cast while in a sedentary position, she changed into closed toed shoes while working on the workroom floor. Plaintiff's cast was removed completely on June 19, 2009. (Pl.'s Timeliness Aff. at 4, Def.'s App. Ex. C, ECF No. 25-3 at 6.)[28] Therefore, the evidence shows that Bush's impairment lasted less than six months, and therefore, her impairment was transitory as that term is defined by 29 C.F.R. §1630.15(f).

---

[28] Plaintiff argues in her initial "Reply to Defendant's Summary Judgment Motion" that she continued to wear the walking cast for several months after she returned to work in June, without any supporting citation to the record. (ECF No. 29 at 2.) However, Plaintiff's Timeliness

That does not end the inquiry though as Defendant must also show that her impairment was minor. Defendant does not address this element separately, but appears to contend that because the duration was less than six months, it is presumptively minor as well. Plaintiff does not address this issue at all. Nonetheless, applying an objective standard, the Court finds the evidence of record overwhelmingly supports the conclusion that Bush's impairment was also minor. As Bush readily admits, she could perform all the duties of her job description wearing a walking cast, and there is no evidence that her orthopedic physician ever removed her from full duty. Indeed, Bush did not provide any note from her treating physician indicating she had any limitations on her ability to work until June 8, 2009, the day before she returned to work. In addition, there is no evidence that any of her co-workers or supervisors observed her having any difficulty performing her job, and Plaintiff has failed to provide any evidence to show that she required any type of treatment for her sprained ankle/foot (other than an open-toed walking cast), or the use of medication. There are no documented complaints of pain, nor evidence of the effect, if any, of her impairment on her activities of daily living. Thus, in light of the above, the Court finds that a reasonable jury could not find that her sprained ankle/foot of less than six months duration was anything other than a minor impairment.

As the objective evidence of record shows that Bush's sprained ankle/foot was both transitory and minor, the Court finds that Defendant is entitled to the defense delineated in Section 12102(3)(B), and therefore, Plaintiff does not qualify as an individual with a disability under the "regarded as" prong of the definition of disability.

---

Affidavit, filed one week after her cast was removed, belies this argument.

### 2. Reasonable Accommodation

Instead of opposing Defendant's arguments that she has not established that she is an individual with a disability, Bush argues that Parker had an obligation to offer her a reasonable accommodation and failed to do so. Bush's argument misses the mark, as she has put the proverbial cart before the horse. The Court does not even reach this argument unless she has first shown that she is an individual with a disability. Because the Court has determined that she has not and cannot establish this prerequisite, her reasonable accommodation argument is precluded.

Moreover, even if Plaintiff had shown she qualifies as an individual with a disability, under the ADAAA, an employer is not required to provide a reasonable accommodation when the employee proceeds under the "regarded as" prong of the definition of disability. 42 U.S.C. §12201(h); 29 C.F.R. §1630.9(e) (2011). Therefore, to the extent Bush is attempting to predicate her failure to accommodate claim on the "regarded as" definition of disability, Defendant had no obligation to provide a reasonable accommodation to her. Therefore, her claim for failing to provide a reasonable accommodation must fail.

### 3. Parker's Use of Sick or Vacation Days for Plaintiff's Leave

In her opposition brief, Bush also advances the argument that Parker's use of sick or vacation days for her leave, without her consent and approval, is evidence of disability discrimination. Plaintiff contends that she expected Parker to place her on administrative leave instead of sick or annual leave because Parker stated that Bush was not allowed to work with a walking cast "(presumptively in part) due to another rank-and-file employee who also had a walking cast . . . for the good of the agency." Pl.'s Opp'n Br. at 12 (ECF No. 45). Plaintiff's

argument misses the mark, however, as Plaintiff again attempts to put the proverbial cart before the horse.

As Defendant correctly points out, Parker's failure to attribute Plaintiff's absence to administrative leave does not establish that Plaintiff is an individual with a disability under the first or third prongs of Section 12102(1). As this Court has already determined that Plaintiff has failed to meet her burden of showing she has a qualifying disability, the Court does not reach the ultimate question of whether Parker's actions, vis a vis attributing Plaintiff's absence to the proper type of leave, constitute discrimination because of a disability.

Accordingly, for the reasons set forth above, Plaintiff has failed to establish a prima facie case of disability discrimination.[29] Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of disability discrimination.

### C. Retaliation Under Title VII

Title VII's anti-retaliation provision states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. §2000e-3(a). Thus, to establish a prima facie case of retaliation under Title VII, a plaintiff must adduce evidence that: "'(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection

---

[29] Defendant also argues, in the alternative, that it has proffered a legitimate, non-retaliatory motive for the adverse employment actions and Plaintiff has failed to show that such reason was pretextual. In light of the Court's ruling that Plaintiff has failed to establish her prima facie case of disability discrimination, the Court does not reach the issue of whether Plaintiff has adduced sufficient evidence to raise a triable issue of fact as to whether Defendant's proffered reason is pretextual.

between her participation in the protected activity and the adverse employment action.'" *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). A claim for retaliation under Title VII is analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas* and *Burdine*. *Nolan v. Swartz Campbell, LLC,* No. 2:05-cv-1508, 2008 WL 598291, at *18 (W.D.Pa. Feb. 29, 2008).

Very recently, while the summary judgment motion was pending in the instant matter, the Supreme Court decided *University of Texas Southern Medical Center v. Nassar,* 133 S.Ct. 2517 (June 24, 2013), in which it concluded that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." 133 S.Ct. at 2533. Thus, under the third prong of the prima facie case, Plaintiff's protected activity must be the "but-for" cause of Defendant's alleged retaliatory action. Neither party brought the *Nassar* decision to the Court's attention, and therefore, neither party has briefed the application of the "but for" causation standard to the case at bar. Nonetheless, additional briefing is not required as even under the less stringent causation test, Bush has failed to show a causal connection between any of the alleged protected activities and Defendant's adverse employment action of sending her home from work for wearing an open-toed boot/cast on the work floor.

### Plaintiff's Prima Facie Case

Only the first and third prongs of the prima facie case are at issue here. As to what constitutes activity protected by Title VII under the first prong, Congress has enunciated that protected activity consists of (a) opposing an employment practice prohibited by Title VII or (b) filing a charge, testifying, assisting or otherwise participating in an investigation, proceeding, or

hearing pursuant to Title VII. 42 U.S.C. §2000e-3(a). *See, e.g., Fogleman v. Mercy Hospital, Inc.*, 283 F.3d 561, 567-70 (3d Cir. 2002); *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 63 (2006). Bush predicates her retaliation claim on three alleged protected activities, the first of which is her reporting of delay mail at the Wilkinsburg Postal facility. Defendant argues that this activity is not protected by Title VII. The Court agrees. Plaintiff has failed to point to any evidence in the record to show that the issue of delay mail was related in any way to unlawful discrimination, nor could the Court find any. Thus, to the extent Plaintiff attempts to predicate her retaliation claim on the reporting of delay mail, that activity is not protected under Title VII, and therefore, cannot support a claim of retaliation under Title VII.

The next activity which Plaintiff contends supports her claim of retaliation consists of a prior EEO claim filed by her in 2005. Although this activity does constitute a protected activity under Title VII, Plaintiff must show a causal link between her 2005 EEO complaint and Parker's refusal in January 2009 to let her work with the open-toed boot. Defendant argues that Plaintiff has not and cannot establish a causal link between these two events, as required under the third prong of the prima facie case.

The law in this Circuit is fairly well established that mere temporal proximity between the protected activity and the adverse employment action ordinarily will not be sufficient to meet Plaintiff's burden of demonstrating a causal connection between the two events, unless the interim period is so short as to be unusually suggestive of retaliatory motive. *LeBoon v. Lancaster Jewish Comm. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007) (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) ("temporal proximity alone, when 'very close,' can in some instances establish a prima facie case of retaliation"); *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir. 1989) (temporal proximity alone was enough to establish causation where

adverse employment action occurred two days after the protected activity, and there were no allegations of wrongdoing by the employee during that time)). *Cf. Shellenberger v. Summit Bancorp., Inc.,* 318 F.3d 183, 189 (3d Cir. 2003) (holding ten day time period between protected activity and adverse employment action, along with evidence that supervisors made comments regarding plaintiff's EEOC complaint in close proximity to her discharge, was sufficient to survive summary judgment); *Zappan v. Pa. Bd. of Probation & Parole,* No. Civ. A. 00-1409, 2002 WL 32174230, * 10 (E.D.Pa. Nov. 25, 2002) (two month period in between protected activity and adverse employment action was not unusually suggestive enough to demonstrative causation without more evidence); *Pritchett v. Imperial Metal & Chemical Co.,* No. Civ. A. 96-0342, 1997 WL 570929, *4 (E.D.Pa. Sept. 8, 1997) (same); *Woods v. Bentsen,* 889 F.Supp. 178, 188 (E.D.Pa. 1995) (no causation inferred from five month period between protected activity and adverse action and lack of other evidence of an intervening pattern of antagonism and retaliation).

Where the facts are such that temporal proximity alone is not enough to infer causation, a plaintiff can avoid summary judgment by producing other evidence of causation, such as, for example, producing evidence of a pattern of antagonism or retaliatory motive during the intervening period, or by showing inconsistent reasons given by the employer for the adverse employment action. *Farrell v. Planters Lifesavors Co.,* 206 F.3d 271, 280-81 (3d Cir. 2000) (citing *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir. 1997) (pattern of antagonism); *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir. 1986) (inconsistent reasons for termination)); *see also Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503-04 (3d Cir. 1997) (where temporal proximity is lacking, courts may look to the intervening period for other evidence of retaliatory animus); *Thomas v. Town of Hammonton,* 351 F.3d 108, 114 (3d Cir.

2003) (quoting *Estate of Smith v. Marasco,* 318 F.3d 497, 513 (3d Cir. 2003)) (holding that in cases where "the temporal proximity is not so close as to be unduly suggestive," the court of appeals has "recognized that 'timing plus other evidence may be an appropriate test'"). The Court notes, however, that these factors are not the exclusive means of establishing causation, and that the totality of the evidence may also provide the necessary inference. *See, e.g., Farrell,* 206 F.3d at 280 (citing *Kachmar*, 109 F.3d at 177).

Initially, Defendant argues that no temporal proximity exists between Plaintiff's protected EEO activity and the adverse employment actions here. In support, Defendant submits that the only prior EEO activity Plaintiff can recall occurred prior to when she was hired as a career Postal employee in 2000, and the computer maintained EEO records indicate that Plaintiff's last prior EEO activity was commenced on 7/29/05 and closed on 11/14/05, more than three years prior to the actions at issue in this case. (Def.'s Ex. L, ECF No. 25-12.) Plaintiff has not responded to this argument.

The Court agrees with Defendant that Plaintiff cannot show any temporal proximity between her prior EEO activity and the alleged adverse employment actions here. Given that more than three years have elapsed since Plaintiff's 2005 EEO activity and the alleged adverse employment action by Parker on 1/15/09 and 4/20/09, the Court finds that causation cannot be inferred merely from the temporal proximity of these events. Thus, to establish the causation element, Plaintiff must point to evidence of a pattern of antagonism or retaliatory motive during the intervening period, or show inconsistent reasons given by Defendant for the adverse employment actions. *Farrell,* 206 F.3d at 280-81.

Defendant submits that there is simply no evidence here of any causal connection between Plaintiff's prior EEO activity and the alleged adverse employment actions. Indeed,

Defendant points to Parker's unrebutted testimony that she was not aware of Plaintiff's prior EEO activity, as well as Plaintiff's acknowledgement that Parker was not involved in any prior EEO activity with her. Parker had only worked with Plaintiff for a couple of months prior to informing Plaintiff on January 15, 2009 that the open-toed boot was a safety violation.[30] In response, Plaintiff counters that Parker would have been aware of her prior EEO complaint from a review of her file, and because information concerning her prior EEO activity was "known on the work floor under the management of Debbie Parker." (Bush Dep. at 36-37.) However, neither of these arguments is supported by any evidence in the record, and therefore, neither raises an issue of fact as to whether a causal connection exists between Bush's prior EEO activity and the adverse employment action.

First, Parker testified that she did not know about Bush's prior EEO complaints, she was not involved in Bush's prior EEO activity, nor did she review her employment file. (Parker Dep. at 43; Parker EEO Aff. ¶¶5 & 6, ECF No. 25-9 at 2.) Indeed, Bush confirmed that Parker was not involved in her prior EEO complaint and that she did not know Parker during that time frame. (Bush Dep. at 37.) Also, there is no evidence in the record to show that Parker even requested Bush's employment file. Moreover, it is undisputed that Parker was only assigned to and became acting manager of the Wilkinsburg Postal facility in early November of 2008, just two months before she sent Bush home from work for wearing an open-toed boot on the work floor.

Second, instead of citing to any evidence in the record to support her arguments, Bush asks this Court to infer that Parker knew about the previous EEO complaint because Parker's cousin Freida, "who worked on the work floor and would have communicated with her cousin

---

[30] Parker testified that she started her position as acting manager of the Wilkinsburg Postal

[Parker]," must have learned about Bush's prior EEO activity from Parker. (Pl.'s Opp'n Br. at 5-6, ECF No. 29.) This is pure speculation on Bush's part. Bush has failed to provide any evidence, either through deposition testimony or affidavits from any of the employees on the work floor, including Freida, indicating that the employees knew about her prior EEO activity and/or that they learned about this activity from Parker. Speculation alone, absent specific facts or reasonable inferences, is not enough to defeat a summary judgment motion. *Griesbaum v. Aventis Pharm.,* 259 F. App'x 459, 466 n. 10 (3d Cir. 2007); *Lehman Bros. Holdings Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.,* ___ F.Supp. 2d ___, 2013 WL 1773818, at *14 n. 8 (E.D.Pa. Apr. 25, 2013) (citing *Venzie Corp. v. U.S. Mineral Prods., Inc.,* 521 F.2d 1309, 1312 (3d Cir.1975) ("Plaintiff has burden to adduce sufficient evidence of its claims such that a jury could find for it 'on the basis of reasonable inferences and not mere speculation'"). Therefore, the Court finds that a reasonable jury could not find that Parker knew about Bush's previous EEO complaint based on the evidence of record.

In addition, the Court finds that the record does not contain any evidence that Parker gave inconsistent reasons for refusing to allow Bush to work with an open-toed boot. Bush submits that Parker fabricated a staff meeting and an admission by Bush in her sworn affidavit in the EEO investigation of the claims in this case, (Pl.'s Opp'n Br. at 6 n. 1), but fails to offer any evidence to support this contention. Rather, the evidence shows that Parker consistently refused to allow Bush to work on the work floor with an open-toed boot for safety reasons, once safety made her aware in January 2009 that such footwear was prohibited by Postal regulations.[31]

---

facility in the beginning of November 2008. (Parker Dep. at 11.)

[31] Bush does not advance any argument or offer any evidence to show that a pattern of antagonism or retaliatory motive existed between the 2005 EEO activity and January of 2009, and therefore, the Court need not address this issue.

Accordingly, the Court finds that Plaintiff has failed to show that a causal connection exists between her 2005 EEO complaint and the alleged adverse employment actions.[32]

The final activity upon which Plaintiff bases her retaliation claim is her request for pre-complaint EEO counseling on April 16, 2009. (Bush EEO Aff. at ¶¶16-18, 20, Pl.'s App. Vol. I, Ex. 2.C, ECF No. 28 at 37.) On April 20, 2009, Bush contends that Parker sent her a "return to duty notice"[33] and she reported to duty immediately on April 21, 2009,[34] but this was just a "ruse" because as soon as she reported to work, Parker sent her home for the same reason as on January 15, 2009—safety—and told her to "[c]ome back when the boot is removed." (*Id.*) Bush further contends that she knew "by that time" that she was being retaliated and discriminated against because she had already filed the request for informal EEO counseling on April 16, 2009. However, Bush has not proffered any evidence to show that Parker actually knew about her request for pre-complaint EEO counseling prior to April 20, 2009, but rather, the evidence actually shows that Parker was not informed of Plaintiff's 2009 EEO complaint until May 4, 2009, more than two weeks after Parker sent the April 17, 2009 Notice of Return to Duty memorandum to Bush. Therefore, no reasonable jury could find a causal connection between Plaintiff's request for pre-complaint EEO counseling on April 16th, and Parker's April 17th memorandum and/or Plaintiff being sent home again on 4/20/09. Accordingly, the Court finds that Plaintiff has failed to show that a causal connection exists between her request for pre-

---

[32] Defendant also argues, in the alternative, that it has proffered a legitimate, non-retaliatory motive for the adverse employment action and Plaintiff has failed to show that such reason was pretextual. In light of the Court's ruling that Plaintiff has failed to establish her prima facie case of retaliation, the Court does not reach the issue of whether Plaintiff has adduced sufficient evidence to raise a triable issue of fact as to whether Defendant's proffered reason is pretextual.

[33] The Return to Duty Notice is actually dated April 17, 2009 (Pl.'s App. Vol. 1, Ex. 2.C, ECF No. 28 at 38); it may be that Plaintiff was referring to the date she received the letter. However, the date she actually received the letter is not material to the motion for summary judgment.

[34] Plaintiff actually reported to work on 4/20/09. *See* Note 5, *supra*.

complaint EEO counseling on April 16, 2009 and the alleged adverse employment actions on 4/17/09 and 4/20/09.

Because Bush has failed to establish a prima facie case of retaliation, the Court will grant Defendant's motion for summary judgment as to her Title VII retaliation claim.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that no genuine issues of material fact exist, and that Defendant is entitled to judgment as a matter of law as to all claims. Therefore, the Court will grant Defendant's Motion for Summary Judgment in its entirety.

An appropriate order will follow.

Dated:   August 8, 2013                                     BY THE COURT:

                                                  __/s Lisa Pupo Lenihan_____
                                                  LISA PUPO LENIHAN
                                                  Chief United States Magistrate Judge

cc:      All Counsel of Record
         *Via Electronic Mail*